The judgment of the United States Customs Court is *reversed*.

UNITED STATES *v.* KRAFT CHEESE Co. (No. 3327)[1]

---

[1] T. D. 44426.

United States Court of Customs and Patent Appeals, November 10, 1930

*Charles D. Lawrence*, Assistant Attorney General (*Marcus Higginbotham*, special attorney, of counsel), for the United States.
*Curtis E. Loehle* (*Nicholson, Crandall & Snyder* of counsel) for appellee.

[Oral argument October 16, 1930, by Mr. Lawrence and Mr. Loehle]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court sustaining a protest against the collector's assessment of additional duty under section 304, Tariff Act of 1922, on a shipment consisting of 620 crates of New Zealand cheese reported not legally marked with country of origin when imported from Canada.

It appears from the testimony that the collector, as a condition precedent to releasing the merchandise, required the marking of each

loaf with a rubber stamp containing the words "Made in New Zealand," which stamp was placed upon the heads of the cheese.

The Government contends that appellee has failed to establish that the importation was not capable of being marked without injury, and has failed to sustain the burden of proof that the cheese was marked with the name of the country of origin at the time of importation.

Appellee contends that the testimony shows that the cheese was incapable of being marked, stamped, branded, or labeled without injury, in legible English words, in a conspicuous place so as to indicate the country of origin; that it did in fact stamp each cheese by placing upon the side thereof a stamp containing the words "Produce of New Zealand"; that this was done at Montreal about one week before the arrival of the cheese at Chicago; that because of mold occurring, covering each cheese, between the time of shipment from Montreal and arrival in Chicago, the marks were obliterated so that they were no longer legible; that no labels could be attached to the cheese without seriously reducing its value for the reason that the prongs necessary to fasten the labels would penetrate the rind, thus permitting the mold to enter the body of the cheese; that all of these facts conclusively show that the cheese was not capable of being marked without injury.

The Government, in its brief and upon oral argument, raises but two questions, as follows:

(a) Was the cheese capable of being marked, stamped, branded, or labeled without injury?

(b) Was the cheese, at the time it was imported, marked in accordance with the provisions of section 304 (a), Tariff Act of 1922?

Said section 304 (a) reads as follows:

SEC. 304. (a) That every article imported into the United States, which is capable of being marked, stamped, branded, or labeled, without injury, at the time of its manufacture or production, shall be marked, stamped, branded, or labeled, in legible English words, in a conspicuous place that shall not be covered or obscured by any subsequent attachments or arrangements, so as to indicate the country of origin. Said marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit. Any such article held in customs custody shall not be delivered until so marked, stamped, branded, or labeled, and until every such article of the importation which shall have been released from customs custody not so marked, stamped, branded, or labeled, shall be marked, stamped, branded, or labeled, in accordance with such rules and regulations as the Secretary of the Treasury may prescribe. Unless the article is exported under customs supervision there shall be levied, collected, and paid upon every such article which at the time of importation is not so marked, stamped, branded, or labeled, in addition to the regular duty imposed by law on such article, a duty of 10 per centum of the appraised value thereof, or if such article is free of duty there shall be levied, collected, and paid upon such article a duty of 10 per centum of the appraised value thereof.

Every package containing any imported article, or articles, shall be marked, stamped, branded, or labeled, in legible English words, so as to indicate clearly the country of origin. Any such package held in customs custody shall not be delivered unless so marked, stamped, branded, or labeled, and until every package of the importation which shall have been released from customs custody not so marked, stamped, branded, or labeled shall be marked, stamped, branded, or labeled, in accordance with such rules and regulations as the Secretary of the Treasury may prescribe.

The Secretary of the Treasury shall prescribe the necessary rules and regulations to carry out the foregoing provisions.

Upon the questions of fact involved the lower court in its opinion said:

The testimony is voluminous and conflicting, but careful consideration thereof fails to disclose anything to offset the appraiser's report that the merchandise was not marked to indicate country of origin when imported. The record shows that approximately 22 crates were opened and inspected as to marking by customs officers, all but one of which were so examined in the presence of two employees of the importer, who were not called as witnesses. There is some testimony to the effect that a perfunctory effort was made to mark each individual cheese in Canada, by inserting a rubber stamp through the slats of the wooden crates and stamping "Produce of New Zealand" in ink over the coat of mold which had previously formed on the cheese. There is no evidence sufficient to refute the positive statements made by defendant's witnesses that the individual loaves of cheese, examined by them at the time of importation, bore no mark to indicate country of origin. Furthermore, plaintiff's witnesses, Madison and Welch, admitted that their inspection of the merchandise when imported showed the individual loaves of cheese were not *legibly* marked. Section 304, Tariff Act of 1922, provides that articles imported "shall be marked, stamped, branded, or labeled, in *legible* English words, in a conspicuous place that shall not be covered or obscured by any subsequent attachments or arrangements, so as to indicate the country of origin." [Italics quoted.]

The court, however, held that the collector released the merchandise after requiring the cheesecloth covering to be marked with a rubber stamp, and that the case was governed by the decision of this court in the case of *Gray & Co. (Inc.)* v. *United States,* 15 Ct. Cust. Appls. 122, T. D. 42192, where it was held that the cheese itself was the article imported and that the paraffin-coated cloth covering was the container, and that the collector's failure to require the cheese inside the cloth to be marked raised a presumption that it could not be done without injury. The lower court, however, failed to distinguish between the facts in the *Gray* case, *supra*, and the facts in the case at bar.

It is clear from the record in the instant case that the cheesecloth referred to was not a container, as was the cheesecloth in the case of *Gray & Co. (Inc.)* v. *United States, supra.* The importer's witness, Madison, testified that there was a cheesecloth *on part* of the rind. At another point he referred to the cheesecloth as a bandage. He said: "There was a bandage around the cheese." Appellee's counsel,

in his brief, states that "The loaves were in cylindrical form and wrapped in cheesecloth so as to cover the curved sides, but not the flat tops and bottoms thereof." Whether this is a proper deduction from the record is not important, but it is clear that whether the cheesecloth covered the sides or the ends of the cheese, it covered only a part and not the whole. We do not think that, under the facts in this case, the cheesecloth can be held to be a container, and in any event it is plain that it did not prevent the cheese itself from being marked. We may add that we think the testimony establishes that the cheesecloth "bandage" became a part of the article itself, and therefore a mark upon the cloth would be a mark upon the article.

Therefore, if it be a fact that the marks placed upon the loaves of cheese by direction of the collector after importation were placed upon the cloth bandage, as to which there is no testimony, no presumption would arise from that fact that the loaves of cheese could not be marked without injury, but on the contrary, such marking would give rise to the presumption that it could be so marked.

Two questions remain in the case:

1. Was the cheese in fact "capable of being marked, stamped, branded, or labeled, without injury," at the time of its manufacture or production?

2. If the first question is answered in the affirmative, was the cheese marked in accordance with the provisions of said section 304 (a)?

Upon the first question, we think the evidence clearly shows that the cheese was capable of being marked. The statute does not require it to be indelibly or permanently marked, but only as nearly so as the nature of the article will permit.

According to the testimony offered by the importer, the only reason that the cheese could not be permanently and indelibly marked was that mold occurred on the outside of the cheese between the time of shipment at Montreal and arrival at Chicago, a period of about one week, obliterating or partially obliterating the marks which it had placed thereon.

Granting that this is a fact, the question arises: Would this mold occur between the time of shipment and importation to such an extent as to practically obliterate marks, stamps, brands, or labels properly applied? If so, the cheese should be held not to have been capable of being marked. We do not think the testimony warrants any such conclusion. The importer, at the time of shipment from Montreal, evidently considered the cheese capable of being marked, for its testimony is that it did mark each cheese before shipment. The testimony is that the cheese was eventually marked upon the premises of the importer, by direction of the collector, by stamping upon the heads of the cheese the words "Made in New Zealand."

It is significant that the importer offered no testimony as to the durability of such marks. The cheese was in its possession and, presumably, had the marks placed thereon by direction of the collector been obliterated within a few days by mold, it would have offered testimony to that effect. This, however, is only a circumstance to be considered in connection with the testimony in the case.

Testimony on behalf of the importer was to the effect that, when the merchandise arrived at Chicago, indelible ink marks were found upon the loaves of cheese, some of which were plain and some of which could not be read, the witness giving as the reason therefor that "after this cheese had been marked the cheese had been warm and the butterfat had come to the surface and gathered mold, and in scratching this off you could only see some indelible marks." On the other hand, the witnesses for the Government testified that no marks whatever could be found upon the cheese upon its arrival in Chicago.

The lower court held that there was no evidence sufficient to refute the positive statements made by defendant's witnesses that the individual loaves of cheese examined by them at the time of importation bore no mark to indicate country of origin.

We can not say that this finding is against the weight of the evidence; and, had the goods been properly marked, stamped, branded, or labeled at Montreal, the fact that no marks to indicate country of origin were found upon the loaves of cheese upon their arrival at Chicago would be a circumstance tending to show that the merchandise was not capable of being marked, stamped, branded, or labeled without injury. However, it is obvious that if the cheese was improperly marked, stamped, branded, or labeled at Montreal, the mere fact that such marks as were placed upon it at Montreal were not found upon arrival at Chicago is not evidence that it was not capable of being marked, stamped, branded, or labeled without injury.

Upon the question of marking at Montreal the lower court said:

There is some testimony to the effect that a perfunctory effort was made to mark each individual cheese in Canada by inserting a rubber stamp through the slats of the wooden crates and stamping "Produce of New Zealand" in ink over the coat of mold which had previously formed on the cheese.

We think this correctly describes the marking that was done in Canada, so far as appears from the record. The testimony is that the cheese was covered with mold at the time of such marking. No effort was made to remove the mold to permit the application of the stamp to the rind of the cheese. No effort was made to select the place upon the cheese that had the least mold upon it. The stamp was inserted through the slats of the crates, thus selecting the most convenient place to mark the loaves of cheese, without any

effort to make the mark "as nearly indelible and permanent as the nature of the article will permit." It should be observed, as heretofore pointed out, that the statute does not require that the article must be indelibly and permanently marked; but, if capable of marking at all, the requirement is only that the marking, in legible English words, shall be as nearly indelible and permanent as the nature of the article will permit.

The burden of proof was upon appellee to show that the merchandise in question was not capable of being marked, stamped, branded, or labeled without injury. So far as attaching any label to the cheese is concerned, by means of prongs entering the body of the cheese so as to hold the labels in place, we think appellee proved that this could not have been done without injury because the breaking of the rind would permit mold to enter the body of the cheese; but it has not sustained its burden of proof that the cheese was not capable of being marked by a rubber stamp without injury, as was finally done.

It is admitted that an indelible rubber stamp could be applied to the cheese without injury and it was the duty of appellee so to apply it as to make the mark as nearly indelible and permanent as the cheese would permit. Appellee did not perform this duty, and the fact that the marks that it did place upon the loaves of cheese were obliterated by mold before importation is not evidence that marks properly applied would also have been obliterated at the time of importation.

We hold that it has not been shown by a preponderance of the evidence that the merchandise in question was not capable of being marked without injury before importation. We further hold that appellee has not shown by a preponderance of the evidence that it did place marks upon the cheese as nearly indelible and permanent as the nature of the article would permit, as the statute requires.

The judgment of the United States Customs Court is *reversed.*